UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION



In re: ) Case No. 10-17252
)
GEORGE C. DAHER, ) Chapter 7
)
      Debtor. ) Chief Judge Pat E. Morgenstern-Clarren
)
) **MEMORANDUM OF OPINION**
) **AND ORDER**[1]

      The only asset in this chapter 7 case is money released to the debtor George Daher from the State of Ohio Division of Unclaimed Funds which, over the objection of the debtor and his attorney John Gold, the court found to be property of the estate and subject to turnover. Later, the court entered an order authorizing the trustee to compromise the controversy based on a settlement agreement between and among the trustee, the debtor, and Mr. Gold. At that point, Mr. Gold refused to sign the agreement, asserting that he had an interest in the funds which prevented him from complying with the court's order.

      The trustee moved to hold Mr. Gold in contempt because he refused to follow through with the settlement order. Mr. Gold responded by claiming a charging or possessory lien on the funds.[2]

      For the reasons stated below, the court finds that Mr. Gold does not have a lien interest and must turn over the funds. The court does not, however, find Mr. Gold to be in contempt.

---

[1] This opinion is not intended for publication, either in print or electronically.

[2] The debtor no longer takes a position on this issue.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1334 and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E) and (O) and is within the court's constitutional authority as analyzed by the United States Supreme Court in *Stern v. Marshall*, 131 S.Ct. 2594 (2011) and its progeny.

## FACTS[3]

The debtor George Daher filed a chapter 7 bankruptcy and received his discharge. A few years later, on motion of the former chapter 7 trustee and over the debtor's protest, the court reopened the case to permit the trustee to administer an asset that had not been known by the debtor earlier–insurance proceeds held by the State of Ohio Division of Unclaimed Funds. At that time, the asset was the subject of a state court proceeding in which Mr. Daher and two other entities raised competing claims. Attorney John Gold represented the debtor.

The state court entered a judgment finding that, as among the debtor and the two entities, the debtor was entitled to make a full claim to all of the money held by the State. The trustee and the debtor agreed that the funds would be released by the State to the debtor and held in Mr. Gold's IOLTA account "until the Bankruptcy Court makes a determination as to whether and how much of the funds are property of the bankruptcy estate. To the extent this Court determines what, if any portion of the funds are property of the estate, John Gold shall deliver said funds to the Trustee."[4]

---

[3] The facts set forth here come from an earlier court opinion, as well as undisputed facts that are in the record.

[4] Docket 44.

### The Adversary Proceeding[5]

The trustee filed an adversary proceeding naming the debtor and Mr. Gold as defendants. The complaint requested turnover of the funds and asserted that the debtor and Mr. Gold "may have or claim to have an interest in the Funds and should be required to answer and assert whatever interest or interests they may have or be forever barred from asserting any claim or interest in and to said Funds."[6]

The debtor and Mr. Gold filed a joint answer which (1) denied that the funds were property of the estate, and (2) did not assert that Mr. Gold held any interest in the funds. This court held that the funds are property of the estate because the debtor's interest in them arose from pre-petition events (the Adversary Judgment).[7] The Bankruptcy Appellate Panel of the Sixth Circuit affirmed.[8]

### The Settlement of the Adversary Proceeding

The trustee and the debtor then settled their dispute based on the fact that this is a surplus case–meaning there was enough money in the estate ($51,022.37) to pay all of the creditors in full, together with the administrative expenses, leaving the surplus ($16,599.99) to be paid to the debtor. In exchange for the debtor agreeing to forego further appeal or litigation, the settlement called for the debtor to retain $18,300.00 and remit $32,722.37 to the trustee. The trustee memorialized this in a motion to compromise, to which he attached the agreed-upon Settlement and Release Agreement for signature by the debtor, the trustee, and Mr. Gold. That document,

---

[5] *Wojcik, Trustee v. Gold, et al.*, Adv. Pro. 13-1232 (Bankr. N.D. Ohio).

[6] *Id.* at docket 1.

[7] *Id.* at docket 23, 24 (Memorandum of Opinion and Judgment).

[8] *Id.* at docket 38, 39.

3

primarily drafted by Mr. Gold, stated that after the exchange of money, then:

> . . . except for the express obligations and rights created by or arising out of this Agreement, the Parties, and each of them, expressly agree that there no longer exists any Dispute or claims of one against any other Party to this Agreement.[9]

The trustee served the motion on all necessary parties, including Mr. Gold. The order granting the unopposed motion required the debtor to send the funds to the trustee within five days.[10]

**Mr. Gold's Refusal to Comply with the Order Granting the Motion to Compromise**

The five days for Mr. Gold to transmit the trustee's part of the money came and went without action, after which the trustee moved for an order to show cause why the debtor and Mr. Gold should not be held in contempt for failure to comply with the order. No one timely responded to the motion and the court entered an order directing the debtor and Mr. Gold to appear and show cause. At that point, Mr. Gold raised in his filings the issue that is now before the court: whether he has a charging or possessory lien on the fund that entitles him to retain enough of the money to satisfy his legal fees.[11] He raised this both as a defense to the show cause and also as the basis for a request that this court hold a hearing to determine the amount of

---

[9] *Id.* at docket 91 (Exhibit A to Motion, at ¶ 3).

[10] *Id.* at docket 95.

[11] The court held an initial hearing on the order, and required both Mr. Gold and the debtor to appear. Statements made at that time established that Mr. Gold alone had made the decision not to turn over the funds and so the court released the debtor from the contempt issue. The court also raised the issue of whether Mr. Gold had a conflict of interest with the debtor because the debtor could not receive any money until Mr. Gold's claim was resolved and the amount of money that the debtor would ultimately receive might be less than the amount he anticipated from the settlement agreement. From that point, Mr. Gold made arguments only on his own behalf and the debtor was given time to retain new counsel if he wished. He did not do so.

4

legal fees that he may withhold from the funds before sending anything to the trustee or the debtor.[12]

The court held oral argument and then took this matter under submission.

## **THE POSITIONS OF THE PARTIES**[13]

Mr. Gold argues that he has a charging lien or a possessory lien on the funds. On the issue of res judicata, he says that although he did not raise this claim in the adversary proceeding, the trustee knew all along that he intended to assert a claim for fees in some amount. Also, he did not raise the lien issue because at that time he did not really have a claim against the trustee until the court decided the money was property of the estate. As to the contempt, he claims that he did not turn over the money because he feared that by doing so he would lose his lien rights.

The trustee's position is that Mr. Gold's lien claim is barred by the doctrine of res judicata because he did not raise it in the adversary proceeding. The trustee contends that Mr. Gold may enforce his fee agreement against the debtor through a lien on the debtor's surplus funds and/or other payment means, but he may not do so against property of the estate.

---

[12] Mr. Gold attached his contingency fee agreement to his brief. (Docket 116, Exh. 1). At oral argument, Mr. Gold stated that he seeks 40% of the roughly $51,000.00 plus out of pocket expenses, with the exact amount to be determined later. He acknowledges that the trustee did not retain him as counsel for the estate and that he did not perform any services for the estate. The trustee agrees that Mr. Gold raised the issue of being paid throughout these proceedings, to which the trustee responded that he could apply for fees, but the Bankruptcy Code did not permit them to be paid from estate property and the trustee would oppose it.

[13] Although the parties raised other issues, the court is limiting this discussion to the dispositive issue.

5

10-17252-jps    Doc 120    FILED 07/21/15    ENTERED 07/21/15 14:40:37    Page 5 of 9

# DISCUSSION

## Claim Preclusion

Under the doctrine of claim preclusion (also referred to as res judicata), "a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or raising a new defense to defeat a prior judgment." *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003). "It precludes not only relitigating a claim previously adjudicated; it also precludes litigating a claim or defense that should have been raised, but was not, in the prior suit." *Id.*

Federal law determines whether the Adversary Judgment precludes Mr. Gold from raising his lien argument. *See Hamilton's Bogarts, Inc. v. Mich.*, 501 F.3d 644, 650 (6th Cir.2007) ("Because the judgment upon which the State relies for its preclusion argument was issued by a federal court, we look to federal law to determine its preclusive effect."). A claim is precluded under federal law when these four elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or should have been litigated in the prior action; and (4) an identity between the present claim and the prior action. *United States v. Vasilakos*, 508 F.3d 401, 406 (6th Cir. 2007). The identity of claims requirement is satisfied if "'the claims arose out of the same transaction or series of transactions, or where the claims arose out of the same core of operative facts.'" *Browning v. Levy*, 283 F.3d 761, 774 (6th Cir. 2002) (quoting *In re Micro-Time Mgmt. Sys., Inc.*, 983 F. 2d 1067 at *5 (6th Cir. 1993)); *see also Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981) (stating that an identity of the causes of action means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action").

The requisite elements are present here. The Adversary Judgment is a final judgment on the merits determining that the funds are property of the chapter 7 estate and subject to turnover. The adversary proceeding involved the same parties: the trustee, the debtor, and Mr. Gold. The trustee's complaint requested a determination of interests in the funds and required all parties to assert whatever interest they felt they had in the funds. If Mr. Gold had a claim to a lien with respect to the funds, he could and should have litigated his lien claim in that proceeding. Finally, there is an identity of claims. Mr. Gold here claims he has: (1) a charging lien on the funds awarded by the state court to his client; and (2) a possessory lien which entitles him to hold the funds until this court determines whether he is entitled to adequate protection. Those claims arise out of the same set of operative facts as the adversary complaint, which alleged that the state court entered a judgment entitling the debtor to the funds and that John Gold might claim an interest in the funds. Consequently, Mr. Gold is precluded from asserting his lien claims. *See LaBarge v. Ireland (In re Ireland),* 325 B.R. 836, 839 (Bankr E.D. Mo. 2005) (holding that res judicata prevented debtor from asserting an exemption because the debtor could have raised the issue as defense to the trustee's motion for turnover).

## **Contempt**

The remaining issue is whether the court should hold Mr. Gold in contempt for failing to comply with the turnover order. In resolving this issue, the court considers the following: "(1) did the respondent receive appropriate notice of the alleged contempt; (2) did the acts or failures to act constitute contempt of court; and (3) if so, what is the appropriate consequence." *In re Walker*, 257 B.R. 493, 496 (Bankr. N.D. Ohio 2001). The trustee, as the party alleging contempt, "has the 'burden of establishing by clear and convincing evidence that . . . [Mr. Gold] violated a definite and specific order of the court requiring [him . . . ] to perform or refrain from

7

performing a particular act or acts with knowledge of the court's order.'" *Id.* at 497 (quoting *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (internal quotation marks and citation omitted)). The Sixth Circuit requires that "the prior order be clear and unambiguous to support a finding of contempt." *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2006) (citation and internal quotation marks omitted). Any ambiguity "must be resolved in favor of the party charged with contempt." *Id.* at 551.

The contempt request is based on Mr. Gold's failure to comply with the order approving the settlement. The court, however, declines to find Mr. Gold to be in contempt because the settlement order did not specifically order or require Mr. Gold to do anything.[14] Moreover, the trustee's motion by its terms only sought authority to compromise his controversy with the debtor. Although Mr. Gold was clearly involved in negotiating the compromise and the order could logically be interpreted to require Mr. Gold to remit the funds in his role as the debtor's attorney, the requirement is not sufficiently definite or specific under the circumstances to support a finding of contempt. The court finds this a close call, and such a call should be resolved in favor of the alleged contemnor.

---

[14] In briefing this matter, the trustee suggests that Mr. Gold's failure to turn over the funds is in contempt of the agreed order entered on September 9, 2013 which provided that he was to deliver any funds determined to be property of the estate to the trustee. *See* docket 118 at 9. However, as the trustee's motion and the order to show cause only reference the settlement order, that issue is not before the court. *See In re Walker*, 257 B.R. at 496 (stating that contempt may be imposed only upon appropriate notice of the alleged contempt).

## CONCLUSION

For the reasons stated, Mr. Gold is precluded from asserting a lien as to the funds. Based on that finding, Mr. Gold is to turn the funds over to the trustee no later than three days after the date on which this order is entered and is to file a notice of compliance at the same time. The court finds further that Mr. Gold is not in contempt of the settlement order.

IT IS SO ORDERED.

_____
Pat E. Morgenstern-Clarren
Chief Bankruptcy Judge