THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| John W. Gold, | ) | CASE NO.: 1:15CV2715 |
| | ) | |
| | ) | |
| Appellant, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Waldemar J. Wojcik, Trustee, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Appellee. | ) | |

Appellant John W. Gold appeals the bankruptcy court's order finding him in civil contempt. The parties have fully briefed the issues and the matter is now ripe for review by this Court. This Court AFFIRMS.

**I. Facts**

On September 9, 2013, Gold entered into an agreed upon order with the bankruptcy trustee, Waldemar Wojcik. The order reads in pertinent part:

> The funds at issue are $51,032.37 held by the State of Ohio, Division of Unclaimed Funds. The funds shall be released to Debtor's counsel, John Gold, and Mr. Gold agrees to hold said funds in his IOLTA account until the Bankruptcy Court makes a determination as to whether and how much of said funds are property of the bankruptcy estate. To the extent this Court determines what, if any, portion of the funds are property of the estate, John Gold shall deliver said funds to the Trustee. The Trustee agrees to cooperate with Debtor and his counsel regarding obtaining a release of the funds to Mr. Gold.

Doc. 26-1 at 18. The funds discussed above, $51,032.37, were obtained for the Debtor through legal work performed by Gold. On February 6, 2015, the bankruptcy court approved the Trustee's motion to compromise a controversy and ordered that the Debtor retain $18,300. The court further ordered that the "debtor shall remit the sum of $32,722.37 to the Trustee within 5 days of the execution of this Order." Doc. 26-1 at 34. Since that date, Gold has declined to turn over the funds. Instead, Gold asserted that he was entitled to a charging lien and therefore relieved of any obligation to turn the funds over to the Trustee.

On April 7, 2015, the bankruptcy court ordered Gold to show cause why he should not be held in contempt for failure to turn over the funds. In first resolving the issue, the bankruptcy court determined on July 21, 2015 that Gold's argument regarding a charging lien was foreclosed by res judicata. The court determined that Gold had failed to raise any claim to the funds in the adversary proceeding and therefore had not preserved the argument for further review. The court, however, declined to find Gold in contempt. In so doing, the Court found that Gold had not been expressly ordered to do anything in the order approving the settlement. Gold moved for reconsideration of the order and the bankruptcy court denied that motion on July 28, 2015. In concluding that order, the court ordered: "The funds are to be turned over to the chapter 7 trustee by noon on the next business day after this order is entered." Doc. 26-1 at 68.

The Trustee filed another motion to show cause on July 31, 2015, asserting that Gold had not turned over the funds. The court granted the motion and set a show cause hearing. Following that hearing on August 17, 2015 and a subsequent hearing on September 17, 2015, the bankruptcy court issued an order that noted in part:

> Based on Attorney Gold's statements made at the last hearing,[4] the court now understands why Attorney Gold resisted complying with the court's orders: he had deliberately and selfishly, and in direct violation of the court's order, taken every penny from the IOLTA account and distributed some of it to his client and most of it to himself. And he now attempts to justify his actions by claiming he was entitled to pay himself for legal work he performed for the debtor.

Doc. 26-1 at 87. The court, however, held in abeyance any final decision on contempt while other proceedings were concluded.

On November 30, 2015, the court issued its order finding Gold in contempt. Gold was ordered to file a written accounting for the funds at issue within 14 days of the order and was ordered to pay a $50 fine for every day he failed to comply. Gold was also ordered to pay the attorney fees incurred by the Trustee in connection with the contempt proceedings. Gold timely appealed the finding of contempt. Over concern regarding the finality of the order, this Court issued a limited remand to allow the bankruptcy court to finalize the sanction against Gold. The bankruptcy court issued its supplemental ruling on March 1, 2016. The court fined Gold in the amount of $32,722.37 – the amount necessary to make the estate whole again. The court also doubled its $50 per day to $100 per day because at that time, Gold had continued to refuse to comply.

The parties have fully briefed the issues raised by Gold. The Court now resolves the appeal.

## II. Legal Standard

This Court reviews a finding of contempt under an abuse of discretion standard. *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir.2006). "An abuse of

3

discretion exists where the district court relied upon clearly erroneous findings of fact or applied an incorrect legal standard." *Id.*

Herein, however, Gold urges a de novo standard of review. Gold raises this contention because he does not challenge the findings of facts or the legal standard employed by the bankruptcy court. Moreover, upon this Court's review, it does not appear that Gold has any basis to challenge those findings. It is beyond dispute that Gold was ordered to maintain funds in IOLTA account and failed to do so. It is further beyond dispute that Gold was ordered to turn those same funds over to the Trustee and failed to do so. Accordingly, on its face, the record does not show anything that approaches an abuse of discretion by the bankruptcy court.

Rather than challenge the contempt order, Gold seeks to raise numerous challenges to the bankruptcy court's authority to issue the underlying order. Gold's challenges, however, are foreclosed.

> The question now arises as to whether, in this contempt proceeding, the Court may inquire into the justification for the turnover order itself. It is clear however that the turnover proceeding is a separate one and, when completed and terminated in a final order, it becomes res judicata and not subject to collateral attack in the contempt proceedings.

*Maggio v. Zeitz*, 333 U.S. 56, 68, 68 S. Ct. 401, 407, 92 L. Ed. 476 (1948). As such, *Maggio* precludes any argument that turnover order was improperly issued.

Furthermore, the Court would note in passing that Gold's argument that the bankruptcy court has relinquished jurisdiction over any dispute regarding his fees is undermined by the record. Gold contends that the court relinquished jurisdiction in its May 24, 2013 order which stated that no stay was imposed and that the state court action could "proceed to resolution upon the issues of fact and law as raised therein." The order

4

itself never discusses turning over jurisdiction to the state court to resolve the ultimate issue of whether the funds would become a part of the estate. Furthermore, none of the parties, Gold included, proceeded as if this were the case. In fact, as noted above, five months after this order was issued, Gold himself signed an agreed order that expressly stated that the bankruptcy court would determine whether and how much of said funds were property of the estate. As such, not even Gold himself believed that the bankruptcy court had relinquished jurisdiction.

Gold had ample opportunity to raise the issue regarding his fees in the adversarial proceeding in the bankruptcy court. He declined to do so. Furthermore, he had the opportunity to appeal the turnover order if he felt the bankruptcy court lacked the authority to issue it. He declined to do so. He may not now raise those arguments for the first time in this appeal in an attempt to undermine the contempt finding issued against him. As the record contains overwhelming evidence that Gold knowingly and willfully failed to comply with a court order, there is no basis upon which to reverse the contempt finding against him.

Gold, however, also challenges several aspects of the sanctions imposed against him. First, Gold contends that the bankruptcy court exceeded the scope of the remand issued by this Court when it enjoined him from seeking a determination regarding his fees from the state court. When this matter was remanded, this Court noted that it was for the purpose of "concluding the proceedings related to the contempt order and finalizing [the] chosen sanctions." Despite Gold's contentions, the fact that the bankruptcy court enjoined him from seeking assistance from the state court did not exceed the remand. It was Gold that continued to seek to avoid application of the

bankruptcy court's order by seeking safe haven in the state court, even after appealing to this Court. As the bankruptcy court's sanction was directly tied to aspects of the contempt, its ruling was fully in compliance with the remand from this Court.

Finally, Gold contends that the $100 per day sanction is punitive because he has already indicated that he does not have the funds to repay the Trustee. Gold, however, ignores that he has not presented this argument to the bankruptcy court. The Second Circuit has noted:

> A district judge's determination whether a civil contempt sanction has lost any realistic possibility of having a coercive effect is inevitably far more speculative than his resolution of traditional factual issues. Since a prediction is involved and since that prediction concerns such uncertain matters as the likely effect of continued confinement upon a particular individual, we think a district judge has virtually unreviewable discretion both as to the procedure he will use to reach his conclusion, and as to the merits of his conclusion.

*Simkin v. United States*, 715 F.2d 43, 38 (2d Cir. 1983). Herein, Gold has not presented the matter to the bankruptcy court. Furthermore, he seeks effectively to testify regarding his financial situation within his brief. As there is no record before this Court of Gold's current financial state, this Court cannot make a determination that the $100 per day fine has lost its coercive effect.

In the end, the record is clear on all the issues pertinent to this appeal. The bankruptcy court ordered Gold to hold certain funds in his trust account in an order agreed to and signed by Gold. The bankruptcy court later ordered Gold to turn those funds over to the Trustee. Gold declined to do so. Gold also represented on several occasions that he declined to do so over fear of losing his possessory interest in the funds. Gold, however, later admitted that he had withdrawn those funds long before, making his assertions to the Court undeniably false. As such, there can be doubt that Gold was and

remains in contempt of court. Furthermore, this Court finds no abuse of discretion in the sanctions levied against Gold. Those sanctions serve to make the Trustee whole and to deter Gold from future, flagrant violations of court orders.

### III. Conclusion

Gold's arguments are overruled. The judgment of the bankruptcy court is AFFIRMED.

IT IS SO ORDERED.


July 18, 2016                    */s/ John R. Adams*
                                 JUDGE JOHN R. ADAMS
                                 UNITED STATES DISTRICT COURT